# Richmond.

## SWECKER v. SWECKER.

### January 8th, 1891.

1. PRACTICE AT COMMON LAW—*Debt—Release—Non est factum—Case at bar.*— A. held D.'s bonds secured by trust deed as of February, 1887. A. died November, 1882, intestate. In 1885, his administrator sued on said bonds. D. pleaded a release, purporting to have been executed by A., a few weeks before his death. To this plea the adm'r filed the replication of *non est factum*. The burden of proof was on D. to establish the genuineness of the release. The court below confirmed the report of the master to the effect that the evidence, which was conflicting, did not establish the genuineness of the release. On appeal: *held*, no error.

2. APPELLATE PRACTICE—*Immaterial Points.*—This court will not consider questions not going to the merits and raised here for the first time.

Argued at Staunton.   Decided at Richmond.

Appeal from decree of circuit court of Highland county, rendered in the cause of Ambrose W. Swecker's administrator, against David W. Swecker, the appellant here.   Opinion states the case.

*G. W. Berlin,* for the appellant.

*G. M. Cochran* and *C. P. Jones,* for the appellee.

FAUNTLEROY, J., delivered the opinion of the court.
VOL. LXXXVII—39

The facts of the case, as the record shows, are: That David W. Swecker, appellant, conveyed to John E. Gum, trustee, by a deed of trust dated 26th of February, 1877, all of his lands and personal property to secure creditors therein named, and among them his brother, Ambrose Swecker, the payment of five bonds, executed to him by the said David W. Swecker, the dates and amounts of the bonds, respectively, being stated, aggregating the sum of $1,247.77, of principal. In July, 1877, said David W. Swecker was adjudged a bankrupt, on his own petition, by the U. S. district court for the western district of Virginia, and on the 19th day of April, 1878, he obtained, from the said court, an order restraining his then assignee in bankruptcy from selling the land conveyed by said trust deed. This injunction was made perpetual by an order of the said court on 3d day of June, 1886, on the distinct ground, named in the order, "that the land embraced in the said deed of trust will not be sufficient to pay off the debts therein secured."

Ambrose Swecker died on the 2d of November, 1882, intestate, and his son, John C. Swecker, qualified as his administrator, at the May term, 1885, of the county court of Highland county. On the 16th of August 1886, John C. Swecker, as administrator of Ambrose Swecker, deceased, instituted this suit against David W. Swecker and others. In the bill all the foregoing facts are charged, and the five bonds named and secured in the trust deed of February 4th, 1877, are charged to be all due and unpaid. David W. Swecker answered the bill, and admitted every allegation contained therein—that he owed the several debts to his brother Ambrose Swecker, named in the deed; but, by way of avoidance, he charged in his said answer, "that the said Ambrose Swecker, in his lifetime, to-wit, on the 25th day of September, 1882, in consideration of work done by the respondent, David W. Swecker, for him the said Ambrose Swecker, and the father of respondent, the said Ambrose Swecker, after the respondent was twenty-one years of age, by a certain writing under his

hand and seal, ready to be produced to the honorable court, did dismiss and discharge this respondent, the said several sums of money and debts mentioned in this bill as due to Ambrose Swecker from this respondent, and to secure the payment of which the said trust deed was in part executed." To this answer John C. Swecker, administrator of Ambrose Swecker, filed his replication denying under oath "that the said several sums of money, or any part thereof claimed by said bill as due to his intestate by the said defendant, David W. Swecker, have in any way or manner been paid and satisfied; and he denies that his said intestate, on the 25th day of September, 1882, or on any other day, executed any writing under his hand and seal by which he discharged the said defendant, the said several sums of money and debts alleged by said bill to be due his intestate by said defendant; and especially does he deny that his said intestate executed, made, or signed the writing set up by said defendant in his said answer."

These pleadings made up and presented the single issue between the parties as to the *genuineness* of the release or receipt pleaded and produced by the defendant; no other question is in the case.

At the October term, 1886, the cause was referred to a master commissioner, who, after taking all the evidence offered by the parties, made and filed his report October 1, 1887, in which he finds due to the administrator of Ambrose Swecker, the plaintiff, from D. W. Swecker the sum of $2,186.71, with interest on $1,247.77 from November 1, 1887 (the amount of the bonds secured in the deed of trust of February 4th, 1877), and says: "All the claims of the plaintiff are entered in this account, the commissioner being of opinion, based on testimony taken by him, which is herewith filed and referred to, marked No. 1, said claims have not been paid; and that the said receipt, marked Ambrose Swecker, has not been proven to be genuine by the evidence introduced by the defendant,

Swecker." At the May term, 1888, on the motion of the appellant, David W. Swecker, the cause was recommitted to the commissioner to "take further evidence as either party may require, and to remodel his report as the evidence may require." The commissioner took the additional evidence and filed the depositions with his second report, April 19th, 1889, in which he says: "The commissioner does not think that the said depositions tend to justify a change of said report No. 1, but rather to strengthen the opinion therein expressed." To this report the appellant filed one exception—that the commissioner erred in not sustaining the genuineness of the release paper. By a decree rendered May 4th, 1889, the court overruled this said exception and confirmed the report. From this decree this appeal is taken; and the only question to be considered by this court is, whether the appellant has satisfactorily proved the genuineness of the said release paper from Ambrose Swecker.

The burden of proving the genuineness of this paper, purporting to have been signed by Ambrose Swecker releasing him from his indebtedness to the said Ambrose Swecker, as evidenced by his bonds secured by the deed of trust of February 4th, 1877, is upon the defendant, David W. Swecker. The body of the paper is admittedly in the handwriting of David W. Swecker, and no one was present when it was signed, if signed at all, by Ambrose Swecker. No one ever heard Ambrose Swecker say that he proposed to give to David W. Swecker such a paper, or heard him say, after the date of the paper, that he had signed or given such a paper. No one ever heard him say that he was indebted to David, or was under any manner of obligation to him on any account. David has produced no account against him of any kind, and it is an undisputed fact that David never mentioned or pretended to claim this defence to any member of Ambrose Swecker's family until May, 1885—two years and six months after the

death of Ambrose—and he does not produce a witness from Highland county who ever heard of this release, except his wife's nephew, who lived fourteen miles away. This was a singular and improbable way of dealing with an honest paper releasing him from a very large debt; but his admissions to three witnesses in the cause utterly preclude him from setting up such a paper. The pretended release is dated 25th day of September, 1882. Ambrose Swecker died November 2d, 1882— just thirty-eight days thereafter. John C. Swecker, a son of Ambrose, testifies that in settling up his father's estate he settled, on 13th day of January, 1885, certain small matters between the estate and his uncle, David W. Swecker, when, then and there, David W. Swecker said to him that everything between himself and the estate of his brother, Ambrose, was settled, except the bonds secured in the trust deed; and he then proposed to let John C., the administrator, have his land on Straight Fork on those bonds secured in the trust deed. John C. Swecker considered this proposition, and in a subsequent interview proposed to take the Jordan land and a lot of cattle for the bonds. David W. Swecker's only reply was that he thought his nephew was too hard on him, but he would think over it. William Swecker, an older brother of John C., was present at both of these interviews, and corroborates the evidence of John C. Swecker in every particular.

Martin M. Jack testifies to a conversation with David W. Swecker, in April, 1885, in which David stated that he was indebted to his brother, Ambrose, and that Ambrose had promised to release him of some of the bonds, but, he said, "the poor fellow is now dead and gone, and it wasn't done." These three witnesses, unimpeached, prove his distinct admissions that he owed the debt; that it never had been released; and that he offered to pay it to his brother's administrator, as late as 13th of January, 1885, in land.

In this strong dilemma in a desperate case, David W.

Swecker undertakes to prove the genuineness of the signature to the release by three witnesses. Benjamin C. Swecker, his son, says the signature is that of Ambrose Swecker to his "best belief." His means of knowing his Uncle Ambrose's handwriting was that, fifteen years prior to his deposing, when he went to school "well on to two months" and stayed at his uncle's house, he set copy for him in his copy book, but has seen none of his writing since. Andrew H. Newman says he saw Ambrose Swecker sign his name as a witness to his father's pension papers for five or six years prior to 1875; and, he says, "it resembles his handwriting very much; but from the length of time since I saw him write his name I could not say anything more positive," &c. This witness did not know in whose handwriting the body of the paper is, although he claimed to be well acquainted with David W. Swecker's handwriting, who, as an admitted fact, wrote the paper. Abraham Life, a witness sixty-four years old, says: "I had a good acquaintance with his (Ambrose Swecker's) handwriting in our school days—fifty years or thereabout; since then I have not seen much of his writing. I have seen him write his name on subscription papers. To the best of my knowledge the signatures are in his handwriting."

In reply to these three witnesses—who really prove their opinions, or belief, or knowledge of the handwriting of Ambrose Swecker to be next to nothing—the administrator introduced six witnesses. John C. Swecker, who had every opportunity of knowing his father's handwriting, and was familiar with it up to the date of his death, and the custody of all his papers ever since, swears unhesitatingly that the signature to the paper offered as a release is not in the handwriting of Ambrose Swecker.

Wm. L. Arbogast says, that he knew Ambrose Swecker well, had seen him write several times, that the signatures do not look like Ambrose Swecker's; he could not be positive about

any man's handwriting. L. B. Waybright says, "He lived with Ambrose Swecker, and knew his handwriting, and said signatures don't look to me like his handwrite." Henry B. Nichols says, he knew the handwriting of Ambrose Swecker to some extent, and "it don't look like his handwriting to me." A. J. Bevrage says, that this signature does not look like a signature of Ambrose Swecker that he held.

John W. Arbogast, former sheriff, had known Ambrose ·Swecker all his life; said Ambrose was surety on his official bond, saw him write his name thereto; has examined that signature with the signature to the release; there seemed to be some resemblance, yet there was a considerable difference in the signatures in my opinion.

Ambrose Swecker's administrator denied the genuineness of the so-called release under oath; and with the burden upon appellant to prove its genuineness, he has signally failed to prove the signature to be the signature of Ambrose Swecker; while the administrator, by a large preponderance of witnesses—both in number and in their opportunities for knowing—has proved that it is not the signature of Ambrose Swecker; and when we consider the manner with which David W. Swecker has dealt with the paper, and his declarations and admissions in regard to his indebtedness to his brother; and the fact that this release passes on its face a gift of $2,000 from a poor man, the conclusion against its genuineness is irresistible. See *Harnsberger* v. *Cochran*, 82 Virginia. The master commissioner, who made his finding on the facts proved in the case, and who confronted all these witnesses and judged of their respective and relative characters and intelligence, decides, with great emphasis and positiveness, against the genuineness of the release, and charges the appellant with the debt. We think that, upon the case made in the circuit court of Highland county, it could not have properly reached any other conclusion than the decree complained of.

There are other points made in the argument in this court, but, as they do not go to the merits of the case, and they are presented, for the first time, in this court, and were not taken in the court below, we do not deem it necessary to consider them; and the judgment of this court is, to affirm the decree appealed from.

DECREE AFFIRMED.